# IN THE COURT OF APPEALS OF IOWA

No. 22-0843
Filed April 12, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BOBBY FITZGERALD HUNT JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, Judge.


Bobby Hunt Jr. appeals his convictions and sentences on two counts of homicide by vehicle. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**


Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Bobby Hunt Jr. appeals his convictions and sentences on two counts of homicide by vehicle: one involving operating under the influence and the other involving reckless driving. He challenges the sufficiency of the evidence showing he committed homicide by vehicle by operating under the influence and contends the district court improperly sentenced him on both counts. Because substantial evidence supports the jury's verdict, we affirm Hunt's conviction of homicide by vehicle by operating under the influence. But based on the "one homicide" rule, we vacate the judgment and sentence entered on his conviction of homicide by reckless driving. We remand for the entry of a corrected judgment and sentencing order.

**I. Background Facts and Proceedings.**

A jury found Hunt guilty of homicide by vehicle for causing the death of Alex Marietta in June 2021. At around 3:00 p.m., Hunt was driving a red SUV on East Kimberly Road in Davenport. Other motorists observed the SUV travelling at a high rate of speed. One driver watched Hunt pass her on a gravel shoulder before cutting across two lanes of traffic. His driving was so notable that the driver took a photo of the SUV while stopped at a red light.

Hunt was heading west in the northernmost lane of traffic as he approached the traffic control at the intersection of East Kimberly Road and Davenport Avenue. The light for the traffic on Kimberly changed to red well before Hunt reached the intersection. One witness described the light as "deep red" when Hunt drove through, meaning it was red long enough that several vehicles traveling on Davenport Avenue had entered the intersection.

Marietta was bicycling south on Davenport Avenue on his way home from work. As Marietta reached the north side of the intersection, Hunt's vehicle shot in front of him. Hunt never slowed and was traveling at seventy-one miles per hour.[1] With no time to react, Marietta's bicycle struck the passenger side of the SUV. The force of the collision broke the front tire in half and upended the bicycle. Despite wearing a helmet, Marietta suffered extensive head trauma and died instantly.

Although the force of the collision shattered the rear passenger-side window and damaged the body of the SUV significantly, Hunt did not stop. He instead drove to his apartment and called 911 about fifteen minutes later. During the call, he acknowledged that a bicyclist was badly injured. But Hunt claimed he could not stop at the scene because he needed to get his child somewhere and was in the middle of traffic.

Corporal Erin Pape was the first law enforcement officer to question Hunt outside his apartment building. Hunt told her that the traffic light was yellow at the time of collision and again claimed he could not stop after because of heavy traffic. Hunt also claimed that he stopped in a parking lot to call 911 but his phone battery was dead. While they spoke, Hunt took two sips from a bottle of brandy before Corporal Pape confiscated it.

At trial, Corporal Pape testified about her observations of Hunt during the interview. She told the jury that she immediately noticed Hunt's eyes were bloodshot and watery, which could result from intoxication or crying. Because she

---

[1] The speed limit was forty-five miles per hour.

was sick and using mentholated cough drops, Corporal Pape could not detect any odor on his breath. Over time, she noted other behaviors that showed Hunt could have been intoxicated:

> He couldn't seem to stay on one topic very long. There was a lot of bouncing around, a lot of elevation and emotion, and at some points, he was getting very close to my face, to where it made me uncomfortable, and so, that behavior seemed to become more prominent and more aggressive as the incident went on.

Officer Luke Figie, a traffic investigator, arrived at the apartment complex to take over the investigation. Officer Figie testified he could smell an odor of alcoholic beverage emitting from Hunt, which got stronger as Hunt drew closer. When asked, Hunt stated the only thing he had to drink after the collision was the "two or three" sips of brandy that he took in front of Corporal Pape. Officer Figie also observed Hunt display a "rash of emotions up and down" during the conversation. The change in Hunt's demeanor became most apparent when Officer Figie informed him that he was requesting a warrant to test Hunt's blood. Hunt became increasingly agitated before fleeing on foot. The ensuing chase lasted about ten minutes before Hunt surrendered.

A sample of Hunt's blood was drawn three and one-half hours after the collision. Testing showed a blood alcohol concentration of 0.131 and the presence of cocaine and marijuana metabolites. At trial, a criminalist explained a method used to extrapolate a person's blood alcohol concentration at an earlier time. Using this method, he estimated that Hunt's blood alcohol concentration would have been between 0.166 and 0.210 at the time of the collision if Hunt had consumed no alcohol after. He also extrapolated what Hunt's blood alcohol concentration would have been at the time of the collision if Hunt drank three-

fourths of the bottle of brandy after, estimating it would have been between 0.106 and 0.150.

The State obtained several recordings of Hunt's SUV traveling on Kimberly Road and showed them at trial. One recording was taken by a camera mounted on a city transit bus that Hunt passed shortly before the intersection. It shows Hunt's speed relative to the bus, which was traveling at thirty-eight miles per hour. The bus recording also shows few vehicles on the road near Hunt after the collision, contradicting statements Hunt made during the 911 call and his interview with Corporal Pape. Another recording was taken by a dashboard camera installed in a vehicle heading east on Kimberly Road that was stopped at the intersection when the collision occurred. The traffic light is red when the recording begins, and it shows Hunt's vehicle entering the intersection about six seconds later. Video taken by a traffic camera mounted on the intersection of Brady Street and Kimberly Road shows Hunt's vehicle running a red light shortly after the collision with Marietta.

A jury found Hunt guilty of homicide by vehicle by operating under the influence, operating under the influence, homicide by vehicle by reckless driving, and leaving the scene of an accident resulting in death. The district court merged the conviction for operating under the influence with the conviction for homicide by vehicle by operating under the influence and sentenced Hunt to incarceration for a term not to exceed twenty-five years. It sentenced Hunt to incarceration for terms of fifteen years each for homicide by vehicle by reckless driving and leaving the scene of an accident resulting in death. The court ordered Hunt to serve the three sentences consecutively, and Hunt appealed.

**II. Sufficiency of the Evidence.**

Hunt first challenges the sufficiency of the evidence supporting his conviction for homicide by vehicle by operating under the influence. We review this claim for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In doing so, we view the evidence and any reasonable inferences drawn from it in the light most favorable to the State. *Id.* If substantial evidence supports the verdict, we affirm. *Id.*

The State charged Hunt with two counts of homicide by vehicle. One count was based on Hunt operating under the influence, *see* Iowa Code § 707.6A(1) (2021), and the other was based on reckless driving, *see id.* § 707.6A(2). Hunt does not dispute the verdict based on reckless driving but argues there is insufficient evidence to show his intoxication caused Marietta's death.

The trial court instructed the jury that it could find Hunt guilty of the charge if the State proved:

> 1. On or about June 3, 2021, the defendant:
> a. operated a motor vehicle while under the influence of alcohol or a drug or a combination of such substances; or
> b. operated a motor vehicle while having a concentration of .08 or more; or
> c. operated a motor vehicle while any amount of a controlled substance is present in his system as measured in the defendant's blood or urine.
> It is not necessary for all jurors to agree to just (a) or (b) or (c). It is only necessary that each juror agrees to at least one of these three alternatives.
> 2. The defendant's act or acts set out in Element 1 unintentionally caused the death of Alex Marietta.
> Cause is established if the defendant's act or acts set out in Element 1 were a substantial factor in bringing about the death of Alex Marietta, and the death of Alex Marietta would not have happened except for those acts.

The State presented evidence showing Hunt's blood alcohol concentration was more than .08 at the time of the collision and he tested positive for both cocaine and marijuana, establishing the first element of the charge. But Hunt challenges the second of element, arguing the evidence does not show he "was feeling the effects of alcohol and drugs immediately after the accident."

Substantial evidence shows Hunt's intoxication caused Marietta's death. Although Hunt seemed composed while talking to law enforcement at first, his composure in the face of what occurred could result from his intoxication. But over time, Hunt showed more erratic behavior with Corporal Pape noticing he changed topics and bounced around. After Officer Figie told Hunt that he was requesting a warrant to draw Hunt's blood, Hunt became agitated and uncooperative before fleeing. One can reasonably conclude that running from law enforcement shows Hunt's decision making was impaired by intoxication. That same poor decision making could have led to Hunt's excessive speeding, as well as his inability to perceive[2] or judge the changing light, which led to him running the light at least six seconds after it changed to red. Hunt argues that it was this reckless driving that caused Marietta's death without acknowledging that reckless driving can result from intoxication. Because sufficient evidence supports a finding that Hunt's intoxication caused Marietta's death, we affirm his conviction for homicide by vehicle by operating under the influence.

---

[2] Hunt's statement that the light was yellow at the time of the collision suggests that his perception was impaired.

**III. Sentence.**

Hunt also contends the sentences imposed on his convictions for homicide by vehicle by operating under the influence and homicide by vehicle by reckless driving violate the one-homicide rule. *See State v. Ceretti*, 871 N.W.2d 88, 96 (Iowa 2015) (noting the trial court is prohibited from entering judgments and imposing sentences for multiple homicide offenses when a defendant is convicted of killing only one person). The State agrees. We therefore vacate the judgment and sentence entered on Hunt's conviction of homicide by vehicle by reckless driving, and we remand for the entry of a corrected judgment and sentencing order consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**